UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
ABILENE DIVISION

JOSE IVAN SIERRA RUIZ,

     Petitioner,

v.

TODD BLANCHE, et al.,[1]

     Respondents.

No. 1:26-CV-040-H

## **ORDER**

The Fifth Circuit held recently that aliens who are present in the United States without previously being admitted by immigration authorities—also known as "applicants for admission"—must be detained under the INA. *Buenrostro-Mendez v. Bondi*, 166 F.4th 494 (5th Cir. 2026). Jose Ivan Sierra Ruiz, a native and citizen of Venezuela, is one such alien, having illegally entered the United States several years ago. His habeas petition, filed before the Fifth Circuit's decision in *Buenrostro-Mendez*, demands his release based on the Fifth Amendment's Due Process Clause, the INA's implementing regulations, and the APA. Dkt. No. 1. He also seeks relief as a member of a California federal action challenging the termination of his Temporary Protected Status as a Venezuelan national. Dkt. No. 11; *see Nat'l TPS All. v. Noem*, No. 25-CV-1766 (N.D. Cal.) (*NTPSA*).

*Buenrostro-Mendez* forecloses Sierra Ruiz's regulatory and APA claims. His due process claim fails, too. And—though counsel does not acknowledge it—the Supreme Court stayed the effect of the *NTPSA* action months ago. Counsel is warned that failure to

---

[1] Todd Blanche assumed the role of Acting Attorney General on April 2, 2026. Thus, he is automatically substituted as a party to this action. *See* Fed. R. Civ. P. 25(d).

cite controlling case law is sanctionable.  The petition and supplemental claim (Dkt. Nos. 1; 11) are denied.

## 1.    Background

Sierra Ruiz was detained after illegally entering the United States in 2022.  Dkt. No. 1 ¶ 1.  Amidst a wave of illegal entries across the U.S.-Mexico border and a resulting lack of space to hold detainees, ICE released Sierra Ruiz into the United States.  *Id.*; Dkt. No. 10 at 5.  Sierra Ruiz says he was released on recognizance, Dkt. No. 1 ¶ 1, but the respondents say he was released on humanitarian parole.  Dkt. Nos. 9 at 2; 10 at 5; *see* 8 U.S.C. § 1182(d)(5)(A).  Either way, Sierra Ruiz received a Notice to Appear, charging him with removability as an alien "present in the United States without being admitted or paroled, or who arrived in the United States at any time or place other than as designated by the Attorney General."  Dkt. No. 10 at 7; *see* 8 U.S.C. § 1182(a)(6)(A)(i).  While on parole, Sierra Ruiz has twice violated his conditions of release.  Dkt. No. 10 at 5.

In April 2025, Sierra Ruiz's Temporary Protected Status, issued by virtue of his Venezuelan citizenship, expired.  *Id.*  Then, in September, an immigration judge ordered Sierra Ruiz removed.  *Id.*  Since Sierra Ruiz timely appealed, the order has not yet become final.  *Id.* at 6; Dkt. No. 1 at 2 n.1.  In December 2025, ICE detained Sierra Ruiz and placed him in custody at the Bluebonnet Detention Center in Anson, Texas.  Dkt. No. 1 ¶ 7.  He remains in ICE custody.[2]

---

[2] ICE's Online Detainee Locator System indicates that Sierra Ruiz has since been transferred to the Eden Detention Center, which is located in this Court's San Angelo Division.  However, "[p]ersonal jurisdiction and venue are determined at the outset of litigation and are not affected by subsequent events."  *Smilde v. Snow*, 73 F. App'x 24, 26 (5th Cir. 2003); *see also Moler v. Wells*, 18 F.4th 162, 166 n.7 (5th Cir. 2021).  Thus, the Court retains jurisdiction over Sierra Ruiz's petition.

At the end of January, Sierra Ruiz petitioned for a writ of habeas corpus. *See id.* The petition raises four claims. First, he contends that his "[r]e-detention absent materially changed circumstances violates 8 C.F.R. § 236.1(c)." Dkt. No. 1 at 7; *id.* ¶¶ 24–26. Second, without citation, he asserts that his re-detention requires "notice" as well as "materially changed circumstances," and therefore constitutes arbitrary and capricious action in violation of the APA. *Id.* ¶¶ 27–29. Third, he contends that his re-detention violates the Due Process Clause of the Fifth Amendment. *Id.* ¶¶ 18–23. Finally, in a supplemental filing, he seeks relief as a member of the *NTPSA* action in the Northern District of California. *See* Dkt. No. 11.

## 2. Legal Standard

"[A]bsent suspension, the writ of habeas corpus remains available to every individual detained within the United States." *Hamdi v. Rumsfeld*, 542 U.S. 507, 525 (2004) (citing U.S. Const. art. I, § 9, cl. 2). With 28 U.S.C. § 2241, Congress authorized federal courts to resolve habeas petitions, including in immigration-detention cases. *Zadvydas v. Davis*, 533 U.S. 678, 687–88 (2001). Habeas exists solely to "grant relief from unlawful imprisonment or custody." *Pierre v. United States*, 525 F.2d 933, 935–36 (5th Cir. 1976). Thus, for the writ to issue, the petitioner must be "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3); *see Orellana v. Kyle*, 65 F.3d 29, 31 (5th Cir. 1995). A court considering a habeas petition must "determine the facts, and dispose of the matter as law and justice require." 28 U.S.C. § 2243.

## 3. Analysis

As noted above, Sierra Ruiz raises four claims: two arising under the INA's implementing regulations and the APA, one arising as a matter of due process, and one

arising out of the *NTPSA* action.  *Buenrostro-Mendez* forecloses the first two claims, and the *NTPSA* claim is frivolous.  The Court has also considered the constitutionality of detention pending a final order of removal in numerous prior cases.[3]  Even so, the Court considers the arguments raised in Sierra Ruiz's briefing to determine whether he is entitled to release as a matter of due process.  The answer is no.

### A.    *Buenrostro-Mendez* forecloses Sierra Ruiz's regulatory and APA claims.

Sierra Ruiz's regulatory and APA claims are puzzling.  He contends that, "[a]lthough 8 C.F.R. § 236.1(c) authorizes DHS to arrest and detain a noncitizen whose removal proceedings are pending, that authority" is constrained such that "[o]nce DHS has exercised [its] discretion to release a respondent on bond, it may not re-detain the individual without a legitimate and materially changed custody basis."  Dkt. No. 1 ¶ 16.  He further contends that this construction is required to maintain consistency with the overall "regulatory scheme and constitutional norms."  *Id.* ¶ 17.

What makes this puzzling is that Section 236.1(c) says precisely none of that.  First, that provision does not apply to *any* noncitizen, but only those subject to 8 U.S.C. § 1226.  *See* 8 C.F.R. § 236.1(c)(1)(i)–(ii) (describing aliens subject to Transition Period Custody Rules and mandatory detention under Section 1226).  Second, none of the subsections in section 236.1(c) suggest a changed-circumstances requirement, except for subsection (c)(4), which provides that certain criminal aliens (a category that does not include Sierra Ruiz) might be released in "special circumstances."

---

[3] *Diaz Patino v. Villegas*, ___ F. Supp. 3d ___, No. 1:25-CV-276, 2026 WL 673166 (N.D. Tex. Mar. 9, 2026); *Higareda-Cano v. Noem*, No. 1:25-CV-225, 2026 WL 274495 (N.D. Tex. Jan. 30, 2026); *Goyo Martinez v. Villegas*, No. 1:25-CV-256, 2026 WL 114418 (N.D. Tex. Jan. 15, 2026); *Garibay-Robledo v. Noem*, 814 F. Supp. 3d 747 (N.D. Tex. 2026); *Gomez Hernandez v. Lyons*, No. 1:25-CV-216, 2026 WL 31775 (N.D. Tex. Jan. 6, 2026); *Montelongo Zuniga v. Lyons*, 814 F. Supp. 3d 685 (N.D. Tex. 2025).

Aside from being atextual, Sierra Ruiz's contention ignores the elephant in the room. Section 236.1 is a regulation that implements Section 1226. Next door to Section 1226 is Section 1225. That statute broadly defines certain aliens as "applicant[s] for admission." 8 U.S.C. § 1225(a)(1). Sierra Ruiz is an applicant for admission because he is "[a]n alien present in the United States who has not been admitted." 8 U.S.C. § 1225(a)(1). And in *Buenrostro-Mendez*, the Fifth Circuit held that such aliens are subject to mandatory detention without bond under Section 1225(b)(2)(A). *See Buenrostro-Mendez*, 166 F.4th at 498.

In other words, Sierra Ruiz seeks relief under a Section 1226 regulation when he is instead subject to mandatory detention under Section 1225. Thus, there can be no valid regulation setting out the conditions for Sierra-Ruiz's re-detention, because his original release was in violation of statute. *See Nieto Torres v. Noem*, No. 1:25-CV-197, 2026 WL 695639, at *4 (N.D. Tex. Mar. 9, 2026). Sierra Ruiz's regulatory claim fails.[4]

Sierra Ruiz also challenges his detention as violative of the APA. Dkt. No. 1 ¶¶ 27–29. He does not specify what regulations the respondents violated; presumably, he is referring back to his misinterpretation of Section 236.1. Even so, because *Buenrostro-Mendez* determined that DHS has the correct view of the law, his APA claim necessarily fails, too.[5]

---

[4] Even if this Court were not bound by *Buenrostro-Mendez*, it would have reached the same result for the reasons discussed in its numerous prior decisions on this issue. *Supra*, n.2.

[5] Furthermore, for the reasons explained in *Garibay-Robledo*, 814 F. Supp. 3d at 760, the availability of habeas relief precludes APA relief. The Court also notes that, at times, Sierra Ruiz's briefing appears to veer into the question of whether his removal is significantly likely in the reasonably foreseeable future. *See* Dkt. No. 11 at 3 (citing *Zadvydas*, 533 U.S. 678). But *Zadvydas* addresses due process rights *after* the final order of removal has issued: It says so in the first sentence of the opinion. *Id.* at 682.

**B.    Sierra Ruiz's due process claim fails.**

Next is Sierra Ruiz's claim that he has a liberty interest earned by virtue of being released into the United States that cannot be infringed absent "heightened procedural and substantive justification." Dkt. No. 1 ¶ 20. He makes this assertion with no authority, other than a generic and passing reference to *Zadvydas*. *Id.* ¶ 21. His claim appears to be based in both substantive and procedural due process. But either way, he is not entitled to relief.

Start with substantive due process. That doctrine protects "only 'those fundamental rights and liberties which are, objectively, deeply rooted in this Nation's history and tradition.'" *Dep't of State v. Muñoz*, 602 U.S. 899, 910 (2024) (quoting *Washington v. Glucksberg*, 521 U.S. 702, 720–21 (1997)). While still recognizing due-process rights for aliens present in the United States, *see, e.g.*, *Trump v. J.G.G.*, 604 U.S. 670, 673 (2025), the Supreme Court has long affirmed the constitutionality of executive immigration procedures. The "through line of history," the Supreme Court recently explained, is "recognition of the Government's sovereign authority to set the terms governing the admission and exclusion of noncitizens." *Muñoz*, 602 U.S. at 911–12. To that end, "Congress regularly makes rules that would be unacceptable if applied to citizens." *Mathews v. Diaz*, 426 U.S. 67, 80 (1976).

The principle is no less true for immigration detention. In fact, the Supreme Court has endorsed the constitutionality of detaining aliens without bond during the pendency of removal proceedings. In *Demore v. Kim*, the Supreme Court acknowledged that "the Fifth Amendment entitles aliens to due process of law in deportation proceedings." 538 U.S. 510, 523 (2003) (quoting *Reno v. Flores*, 507 U.S. 292, 306 (1993)). But it clarified that "detention during deportation proceedings" is nevertheless a "constitutionally valid aspect of the deportation process." *Id.* Indeed, "when the Government deals with deportable

– 6 –

aliens, the Due Process Clause does not require it to employ the least burdensome means to accomplish its goal." *Id.* at 528. It follows that "the Government may constitutionally detain deportable aliens during the limited period necessary for their removal proceedings." *Id.* at 526. Against that backdrop, the notion that substantive due process requires Sierra Ruiz's release is untenable.

A procedural due process claim fares no better. As an "applicant for admission," Sierra Ruiz has "only those rights regarding admission that Congress has provided by statute." *DHS v. Thuraissigiam*, 591 U.S. 103, 140 (2020); *see Landon v. Plasencia*, 459 U.S. 21, 32 (1982) ("This Court has long held that an alien seeking initial admission to the United States requests a privilege and has no constitutional rights regarding his application, for the power to admit or exclude aliens is a sovereign prerogative."). With Section 1225, Congress set the procedural rights afforded to aliens who are present in the United States without admission. "Read most naturally," Section 1225(b)(2)(A) "mandate[s] detention of applicants for admission until certain proceedings have concluded." *Jennings v. Rodriguez*, 583 U.S. 281, 297 (2018). No part of the statute "says anything whatsoever about bond hearings." *Id.* Accordingly, Sierra Ruiz is not entitled to release as a matter of procedural due process.

## C.    Sierra Ruiz's *NTPSA* claim fails.

Last is Sierra Ruiz's *NTSPA* claim. He says that "[t]he legality of the government's attempt to terminate TPS for Venezuelan nationals is currently the subject of ongoing federal litigation, including [*NTPSA*]. Federal courts have found that DHS exceeded its statutory authority in attempting to terminate TPS and vacate prior extensions." Dkt. No.

11 at 2.[6]  Sierra Ruiz then goes on to say that this "further undermin[es] any claim that [he] is presently removable."  *Id.*  To the extent Sierra Ruiz contends his release is required because any final order of removal would not be executable, he provides no authority to that point.  For the reasons discussed above, no due process problem is raised by his detention pre-final order of removal.

And to the extent he seeks relief as a member of *NTPSA*, his brief is missing a critical citation: In October 2025, the Supreme Court stayed a nationwide injunction preventing the removal of NTPSA members.  *Noem v. Nat'l TPS All.*, 146 S. Ct. 23 (2025).  That stay remains in place until the "disposition of a petition for a writ of certiorari, if such writ is timely sought."  *Id.* at 24.  The Court recognizes that some petitioners have sought independent relief through a subsequent declaratory-judgment-only order of the Northern District of California, but that order does not purport to bind other district courts.  *See Torres-Coronado v. Bondi*, No. 6:26-CV-055, Dkt. No. 11 at 11–12 (N.D. Tex. Mar. 23, 2026).[7]

### D.    Counsel's failure to adequately prepare the petition and cite controlling case law is sanctionable.

"Ethical lawyering requires competent lawyering," and "[t]o lawyer competently, the advocate must apprise himself of the case's . . . relevant legal standards."  *Bates Energy Oil & Gas, LLC v. Complete Oil Field Servs., LLC*, No. 5:17-CV-808, 2020 WL 10502651, at \*5

---

[6] Despite turning to an *argumentum ad populum*, Sierra Ruiz provides no citations of other courts granting relief on these grounds.

[7] Moreover, if Sierra Ruiz means to say that this Court should take independent action on the TPS question, he is a long ways from the solution.  Vacatur-style relief is inappropriate in habeas.  *See supra*, n.4.  And even if such relief were possible in this case, Congress has "[told] the Judiciary to restrain itself" and stripped its authority over the TPS question.  *Nat'l TPS All. v. Noem*, 169 F.4th 796, 800 (9th Cir. 2026) (Bumatay, J., dissenting from denial of rehearing en banc) (discussing 8 U.S.C. § 1254a(b)(5)(A)).

(W.D. Tex. Oct. 19, 2020).  Here, counsel made multiple missteps.  Her Section 236.1 argument appears to rely on her client's supposed release on recognizance, even though her client was in fact released on humanitarian parole.  That regulatory claim was also so patently atextual that a mere review of the regulation would have made clear that the changed-circumstances standard did not apply.  Counsel also at times appeared to confuse this case with a post-final order of removal case, which is subject to different legal standards.  *See supra*, n.4; *see also, e.g.*, *Nguyen v. Noem*, 797 F. Supp. 3d 651 (N.D. Tex. 2025).  And counsel's reliance on the *NTPSA* action is implausible in light of the months-old and readily-accessible Supreme Court order staying relief in that very case.  All of these errors were compounded by counsel's short petition, which scarcely cited any relevant case law.  *See, e.g.*, *supra*, n.5.

Counsel's failures in this case call into question her compliance with the duties of competence, diligence, and candor.  Thus, the Court issues this warning.  Going forward, counsel should review the evidence relevant to her clients' habeas petitions before filing.  Attaching that evidence is best practice because it avoids potentially "disastrous error[s]" that come from misunderstanding the relevant facts of a case.  *Rabadanov v. Mullin*, No. 1:25-CV-286, Dkt. No. 17 at 1 (N.D. Tex. Mar. 31, 2026) (show-cause order for severe evidentiary error).  Counsel should also familiarize herself with the governing standards of the Fifth Circuit and the Supreme Court and remain appraised in developments of ongoing actions in which her clients claim membership.  Finally, counsel should cite controlling case law.  If future violations occur, the Court may issue an order to show cause why sanctions should not be imposed.

**4.    Conclusion**

In short, Sierra Ruiz's detention does not violate the INA's implementing regulations, the APA, or the Due Process Clause.  And his release is not required in light of the Supreme Court's stay in the *NTPSA* case.  As an "applicant for admission," Sierra Ruiz is properly detained under Section 1225(b)(2)(A).  *Buenrostro-Mendez*, 166 F.4th at 498.  Thus, the petition for a writ of habeas corpus and supplemental habeas claim (Dkt. Nos. 1; 11) are denied.

So ordered on April 28, 2026.

JAMES WESLEY HENDRIX
UNITED STATES DISTRICT JUDGE